Warren D. Andreas, Legal Counsel Unified School District No. 465 State Bank Building, Suite 303 Winfield, Kansas 67156
Dear Mr. Andreas:
As legal counsel for Unified School District No. 465, you request our opinion regarding the obligation of a unified school district to provide special education services for a pupil. Specifically, you ask whether the provisions of K.S.A. 72-966 are mandatory, requiring the unified school district in which the pupil's parent resides to enter into an agreement with the unified school district in which the pupil attends school and receives special education services.
In order to provide for educational opportunities which will contribute to the development of each exceptional child in Kansas in accord with the child's abilities and capacities, the Legislature enacted the Special Education for Exceptional Children Act, K.S.A. 72-961
et seq. K.S.A. 72-961. Under the act, each state institution is required to provide special education services for all exceptional children housed and maintained in the state institution. K.S.A. 72-970. Winfield State Hospital and Training Center (Winfield State) is among the institutions designated as a "state institution" for purposes of the act. K.S.A. 1996 Supp. 72-962. Therefore, Winfield State, rather than a unified school district, is obligated to provide special education services for exceptional children living at Winfield State.
Due to the closing of Winfield State, a number of children currently living there will be placed in other homes or facilities located within the territory comprising Unified School District No. 465 (USD 465). Such other homes and facilities are not included within the definition of "state institution" in K.S.A. 1996 Supp. 72-962. It is our understanding that placement of a child in a particular home or facility is the decision of a parent of the child.
In most cases, the parent does not reside in USD 465. We are also under the premise that none of the children will be living with a person acting as parent.
K.S.A. 72-966 provides in part:
 "(a) The board of education of every school district shall provide special education services for all exceptional children who are residents of the school district.
 "(b) When an exceptional child is admitted to a hospital, treatment center, or other health care institution, or to a group boarding home or other care facility, and the institution or facility is located outside the school district in which the child resides, the district in which the institution or facility is located must contract with the district in which a parent or person acting as parent of a child resides, to provide special education or related services, if such services are necessary for the child. Special education services required by this subsection shall be provided pursuant to and in accordance with a contract which shall be entered into between the board of education of the school district in which the child is a resident and the board of education of the school district in which the child is living. . . . Nothing in this subsection shall be construed to limit or supersede or in any manner affect or diminish the requirements of compliance by each school district with the provisions of subsection (a), but shall operate as a comity of school districts in assuring the provision of special education services for each exceptional child in the state." (Emphasis added.)
The use of "shall" in a statute may be read to mean "may" where the context of the statute requires. Szoboszlay v. Glessner, 233 Kan. 475, 482 (1983); Dillon's Food Stores, Inc. v. Brosseau,17 Kan. App. 2d 657, 659 (1992). In most instances, the word "must" would be viewed as requiring an entity to take designated action without the ability to exercise discretion. However, as with the word "shall," "must" is not always viewed as mandatory.
 "This word, like the word `shall,' is primarily of mandatory effect [citation omitted]; and in that sense is used in antithesis to `may.' But this meaning of the word is not the only one, and it is often used in a merely directory sense, and consequently is a synonym for the word `may' not only in the permissive sense of that word, but also in the mandatory sense which it sometimes has." Black's Law Dictionary, 919 (1979).
The Kansas Supreme Court set forth in Wilcox v. Billings, 200 Kan. 654 (1968), rules and aids to be used in determining whether a statutory provision is directory or mandatory.
 "The difference between directory and mandatory statutes, where their provisions are not adhered to, is one of effect only; the legislature intends neither to be disregarded. However, violation of the former is attended with no consequences but failure to comply with the requirements of the latter either invalidates purported transactions or subjects the noncomplier to affirmative legal liabilities (2 Sutherland Statutory Construction [3rd ed.] § 2801).
 "No absolute test exists by which it may be determined whether a statute is directory or mandatory. Each case must stand largely on its own facts, to be determined on an interpretation of the particular language used. Certain rules and aids to construction have been stated. The primary rule is to determine legislative intent as revealed by an examination of the whole act. Consideration must be given to the entire statute, its nature, its object, and the consequences which would result from construing it one way or the other. It has been said that whether a statute is directory or mandatory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute related to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by rules of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results. On the other hand, a provision relating to the essence of the thing to be done, that is, to matters of substance, is mandatory, and when a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a [sic] compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power or must be performed before certain other powers can be exercised, the statute must be regarded as mandatory. (82 C.J.S., Statutes, § 376)." Wilcox, 200 Kan. at 657-58.
See also Hole-in-One, Inc., v. Kansas Industrial Land Corp., 22 Kan. App. 2d 197, 199-200 (1996).
The residence of a child for the purpose of determining where a child is able to attend school is determined by the location of the residence of the parent, or person acting as parent, of the child, rather than by the location where the child physically lives. See K.S.A. 72-1046. As stated in subsection (a) of K.S.A. 72-966, the school district in which a child is a resident remains under an obligation to provide special education services to the child needing such services despite the fact the child may be living in a hospital, institution, or other setting located many miles outside the district. In order to ensure State compliance with Federal laws requiring that the services be provided, see Minutes, Senate Committee on Education, March 4, 1992; Minutes, House Committee on Education, April 8, 1992, the Legislature established a mechanism by which the school district in which the child resides would be able to provide the services through the school district in which the child lives — a contract between the districts.
The provisions in subsection (b) of K.S.A. 72-966
stating that the district in which the institution or facility is located "must" contract or "shall" contract with the district in which a parent of the child resides are, however, directory. The obligation to provide special education services to a particular exceptional child remains with the school district in which the child is a resident. The provisions do not remove from the school district in which the child resides all discretion in determining the manner in which special education services are to be provided. The directions are not accompanied by rules of absolute prohibition.
The provisions provide directions for ensuring special education services are provided in a proper, orderly, and prompt fashion to a child living in a school district in which the child is not a resident. Also, the statute states the provision is intended to "operate as a comity of school districts in assuring the provision of special education services for each exceptional child in the state." Comity reflects a willingness to extend a courtesy or respect, or to grant a privilege, not as a matter of right, but out of deference and good will. Black's Law Dictionary, 242 (1979); see Head v. Platte County, Mo., 242 Kan. 442, 447 (1988); Boyce v. Boyce,13 Kan. App. 2d 585, 587 (1989). A mandatory provision does not indicate comity. After giving consideration to the language of the entire statute, it is determined the provisions in subsection (b) of K.S.A. 72-966 are directory.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm